**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TONI BECK, | ) | **ELECTRONICALLY FILED** |
| | ) | |
| *Plaintiff,* | ) | Case No.  2:24-cv-125 |
| | ) | |
| vs. | ) | |
| | ) | |
| COMMONWEALTH OF | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| *Defendant.* | ) | **JURY TRIAL DEMANDED** |
| | ) | |

<u>**COMPLAINT IN CIVIL ACTION**</u>

Plaintiff, Toni Beck, by and through the undersigned counsel, now files this Complaint in Civil Action against Defendant, Commonwealth of Pennsylvania, averring as follows:

<u>**PARTIES**</u>

1.      Plaintiff, Toni Beck, ("<u>Plaintiff</u>") is an African American adult individual who currently resides at 732 Laura Street, West Mifflin, Pennsylvania 15017.

2.      At all times relevant hereto, Complainant suffers from various disabilities pursuant to the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments of 2008, 42 U.S.C. § 1201, *et seq.* ("<u>ADA</u>") such as, Type 2 Diabetes, Gastro/Digestive issues, and most pertinent to this case "Brain Freeze" - a cognitive condition that causes individuals to suffer from decreased ability to comprehend information (the "<u>Brain Freeze</u>") (the "<u>Disabilities</u>").

3.     Defendant, Commonwealth of Pennsylvania, ("Defendant") is a Pennsylvania domestic business corporation with a registered business address of 14 N Linden Street, Duquesne, Pennsylvania 15110, which is the location where Plaintiff reported for duties (the "Facility").

## JURISDICTION AND VENUE

**A.     This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction"), as Plaintiff is advancing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.* (CRA 1981), and the ADA (Plaintiff's claims arising under Title VII, the ADA, and the CRA 1981 are identified as the "Federal Law Claims").

5.     Plaintiff is also advancing claims under the Pennsylvania Human Relations Act 43 P.S. § 951, *et seq.* (the "PHRA") ("State Law Claim").

6.     This Court may exercise supplemental jurisdiction over the State Law Claim pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claim share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claim.

7.     Further, the operative facts between the Federal Law Claims and the State Law Claim mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.     The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

8.    Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (the "Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district.  Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

9.    Specifically, these events and omissions occurred in Allegheny County, Pennsylvania which is one of the counties encompassed by the Western District.

10.    This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny County, Pennsylvania, and conduct arising within Allegheny County is docketed within the Pittsburgh Division of the Western District pursuant to Local Rule 3 (LCvR 3).

**C.    This Court May Exercise Personal Jurisdiction Over Plaintiff's Claims in Compliance with the Eleventh Amendment.**

11.    The Eleventh Amendment of the United States Constitution generally provides states with immunity from suit perpetuated by private parties in federal court. Ackah v. Pa. Dep't of Corr., 2008 U.S. Dist. LEXIS 129718, *8 (2008) (citing *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 502 (3d Cir.2001)).

12.    However, the immunity extended by the Eleventh Amendment is subject to exceptions and specifically where "congressional abrogation" exists. *Id* citing *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir.2002).

13.    The Supreme Court of the United States has recognized that the congressional enactment of Title VII abrogated the Eleventh Amendment and enables private citizens to pursue the state under Title VII in the federal district courts. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976).

14.     Accordingly, Plaintiff may properly pursue Defendant in this Court.

**FACTUAL BACKGROUND**

15.     On or about September 12, 2022, Plaintiff commenced her employment with Defendant in the role of Intake Interviewer (the "Position").

16.     Within the Position, Plaintiff was compensated on an hourly basis with approximately $21.43, and her duties primarily consisted of interviewing candidates requesting and seeking assistance with filing unemployment compensation claims.

17.     During her employment, Plaintiff was subjected to a hostile work environment and discrimination on the basis of her race and Disabilities.

18.     At all times relevant hereto, Plaintiff was under the supervision of Supervisor of Customer Service, Jayme Anderson ("Anderson").   Defendant, by and through Anderson, subjected Plaintiff to a hostile work environment and discrimination on the basis of her race and Disabilities.

**A.     Plaintiff was Subjected to Discrimination and a Hostile Work Environment  on the Basis of Her Race.**

19.     Anderson used her unique position as Plaintiff's direct supervisor to abuse her authority over Plaintiff and subject her to hostilities based on Plaintiff's race.

20.     For example, Anderson expressed her animosity towards Plaintiff by refusing to answer questions from Plaintiff, portraying herself as unapproachable to Plaintiff, and by being generally rude to Plaintiff by refusing to engage in conversation with Plaintiff.

21.     Notably, this treatment was unique to Plaintiff, as none of her Caucasian coworkers were subjected to this hostile environment by Anderson as Plaintiff was.

22.     Furthermore, Plaintiff was subjected to discrimination on the basis of her race.

23.    Plaintiff was subjected to more stringent work performance standards than her similarly situated Caucasian coworkers. These standards were enforced by Anderson who continually kept Plaintiff under a high level of scrutiny.

24.    To that end, Plaintiff was subjected to more frequent and stringent performance reviews than her Caucasian coworkers. With these performance reviews came a heightened attention to Plaintiff's work performance by Anderson and other agents of Defendant. This high level of attention and scrutiny was unique to Plaintiff as her similarly situated Caucasian coworkers were not subjected to this level of scrutiny.

25.    The hostile work environment and discrimination based on Plaintiff's race that was perpetuated by Anderson persisted throughout Plaintiff's tenure at Defendant and in turn caused Plaintiff to suffer from emotional distress in the workplace.

26.    Plaintiff was offered no form of respite from Defendant due to the fact that Plaintiff's supervisor was the person perpetuating the hostile environment and discrimination.

27.    Plaintiff lodged complaints and opposed Anderson's treatment of Plaintiff, yet no change or acknowledgment occurred from Anderson and the unlawful treatment continued.

28.    The actions of Anderson accompanied with her repeated threats of terminating Plaintiff led Plaintiff to fear reporting Anderson to other supervisors and agents of Defendants. Plaintiff felt if she were to report Anderson she would be retaliated against and lose her job.

29.    In addition to these facts, Defendant was discriminated against on the basis of her Disabilities.

30.    As previously averred, Plaintiff suffers from various Disabilities, the one most pertinent to this case is the Brain Freeze, which results in Plaintiff suffering from a decreased ability to comprehend information.

**B.**     **Plaintiff was Discriminated Against on the Basis of Her Disabilities.**

31.     On or about October 27, 2022, Plaintiff informed Defendant of her Disabilities, specifically the Brain Freeze and how it manifests itself by limiting Plaintiff's memory and information retention.

32.     In or about January 2023, Plaintiff was subjected to one of the aforementioned performance reviews by Anderson.

33.     At this performance review, Anderson informed Plaintiff that she needed to discuss with Plaintiff the way she was conversing with callers seeking unemployment compensation information. In this discussion, Anderson stated that Plaintiff was not following Defendant's protocols in regard to conversing with callers and fielding their questions.

34.     Plaintiff accepted these comments from Anderson as constructive criticism and took the conversation as an opportunity to reinform Anderson about her Disabilities, namely the Brain Freeze, and explain how that may be affecting Plaintiff's world performance in regard to this specific situation.

35.     Plaintiff informed Anderson that accommodations are available that would aid Plaintiff in performing her work duties at a more acceptable level for Anderson and Defendant.

36.     At this point Anderson became outraged and snapped at Plaintiff stating, "*Well if that is the case, maybe you (Plaintiff) just can't work here*". Plaintiff was rightfully taken aback by Anderson's outburst, but in an attempt to reach an amicable solution, requested the accommodation of having notes with her to assist in her memory retention. Anderson denied Plaintiff's request for accommodation and walked away from Plaintiff, effectively ending the performance review.

37.     In addition to this comment, on or about January 6, 2023, Plaintiff was engaging Anderson in conversation which led Anderson to ask Plaintiff "when did you start working here?"

and before Plaintiff even had a chance to respond, Anderson replied saying," do you even remember when you started?"

38.    This comment is a perfect example of the hostilities Plaintiff was subjected to while employed at Defendant. Anderson knew that Plaintiff's Disability exacerbated itself through memory loss and instead of providing a inclusive and accommodative work environment, she chose to mock and embarrass Plaintiff for her Disability.

## C.    Plaintiff was Subjected to a Hostile Work Environment on the Basis of Her Disabilities.

39.    On or about February 1, 2023, Plaintiff was again approached by Anderson who stated that Plaintiff's work performance was falling below the standards of Defendant. To remedy this, Defendant requested Plaintiff to conduct a retraining on Defendant's policies and if Plaintiff did not improve, she would be terminated.

40.    In response to this, Plaintiff requested accommodation from Defendant to receive the training in a manner that would be constructive for Plaintiff with regard to her Disabilities. Defendant and Anderson denied Plaintiff's request for accommodation and assigned Plaintiff to conduct the training without any accommodation. This made the training for Plaintiff extremely difficult and ultimately unfruitful for both Plaintiff and Defendant. In tandem with the discrimination Plaintiff faced based on her Disabilities, she was also subjected to a hostile work environment based on her Disabilities. Anderson continually denied Plaintiff any form of accommodation which led to Plaintiff not meeting the heightened standards placed on her.

41.    This led to Anderson threatening Plaintiff with termination on numerous occasions if Plaintiff could not meet the lofty standards she was being held to.

42.     Notably, the standards Plaintiff was held to were unique to her and not applied to her similarly situated non Disabled coworkers.

43.     Anderson's continued threats of termination and repeated refusals to accommodate Plaintiff left her fearing for her job security and caused undue stress and mental anguish.

44.     Ultimately, due to the lack of accommodation provided to Plaintiff, she was unable, as Anderson intended, to meet the unattainable standards that were placed on her.

45.     To this end, on or about February 15, 2023, Plaintiff was brought into a meeting with Anderson and other agents of Defendant. At this meeting Plaintiff was informed that her job performance had not improved and because she had not met the heightened standards placed upon her by Anderson, she was terminated from her employment with Defendant.

### COUNT I
### DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII AND THE PHRA
### 42 U.S.C. § 2000e, *et seq.* and 43 P.S. § 951, *et seq.*

46.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

47.     "In order to establish a *prima facie* case of intentional racial discrimination, an employee must show that: (1) they are a member of a protected group; (2) they are qualified for the position at issue; (3) they were discharged or suffered some adverse employment action by the employer; and (4) they were treated less favorably than other similarly situated employees outside the protected group." *In re Tribune Media Co*., 902 F.3d 384, 402 (3d Cir. 2018) (internal citations and alterations omitted).

**A.     Plaintiff is a Member of a Protected Class on the Basis of Her Race.**

48.     At all times relevant hereto, Plaintiff was a member of a protected class as Plaintiff is an African American and is afforded protected status pursuant to Title VII and the PHRA.

8

**B.**    **Plaintiff was Qualified for the Position of Intake Interviewer.**

49.    Plaintiff was qualified to perform the tasks and job duties of "Intake Interviewer". Specifically, Plaintiff was experienced in written and oral communication, customer service, and critical thinking. Plaintiff gained these qualifications through her extensive work history and used them to their fullest extent in performing her job duties as Intake Interviewer. ,

**C.**    **Plaintiff Suffered an Adverse Employment Action in that Her Employment was Terminated by Defendant.**

50.    Plaintiff was subjected to an adverse employment action in that she was terminated from her employment with Defendant.

**D.**    **Plaintiff was Treated Less Favorably Than Other Similarly Situated Employees Outside the Protected Group.**

51.    Plaintiff was treated less favorably than other similarly situated employees outside the protected group by the treatment of Anderson, who held Plaintiff to unattainable standards that similarly situated Caucasian employees were not held to.

52.    Additionally, Anderson treated Plaintiff in a disparate manner by being dismissive in conversation Plaintiff and purposely ignoring any questions or comments Plaintiff would direct to her.

53.    Anderson's treatment of Plaintiff was starkly dissimilar – indeed worse – than Plaintiff's similarly situated Caucasian coworkers.

54.    In discriminating against Plaintiff because of her race, Defendant and Anderson acted both with malice and reckless indifference to Plaintiff's federally protected rights and Defendant's actions warrant recovery of punitive damages.

55.     As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII and the PHRA, Plaintiff has suffered not only tangible economic loss in the form of lost pay and benefits, but also significant emotional distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Toni Beck, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
### HOSTILE WORK ENVIRONMENT ON THE BASIS OF RACE IN VIOLATION OF TITLE VII AND THE PHRA
### 42 U.S.C. § 2000e, *et seq.*; 43 P.S. § 951, *et seq.*

56.     Plaintiff incorporates the allegations contained in the paragraphs above, as fully set forth at length herein.

57.     In order to state a claim under Title VII for discrimination resulting from a hostile work environment, an employee must show that (1) the employee suffered intentional discrimination because of their race, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the employee, (4) the discrimination would detrimentally affect a reasonable person of the same race in that position, and (5) the existence of *respondeat superior* liability.  *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001).

**A.     Plaintiff Suffered Intentional Discrimination Because of Her Race.**

58.     As previously averred, Anderson exhibited a direct animus towards Plaintiff, one that none of Plaintiff's similarly situated Caucasian coworkers experienced.

59.     Anderson deliberately isolated Plaintiff and went out of her way to avoid Plaintiff and any conversation Plaintiff sought to have with her.

60.    Additionally, Anderson placed Plaintiff and her work performance under an extremely elevated level of scrutiny, one that Plaintiff's Caucasian coworkers were not subjected to.

61.    Due to the extreme level of scrutiny by Anderson, Plaintiff was in a constant state of fear regarding retaining her employment with Defendant.

62.    Furthermore, Anderson repeatedly threatened Plaintiff with termination from her position which led to Plaintiff suffering emotional distress in the workplace.

**B.    Plaintiff Suffered from Severe or Pervasive Discrimination and was Detrimentally Affected by This Discrimination.**

63.    The racial discrimination Plaintiff was subjected to was severe and pervasive in that it forever tinged the work environment to which Plaintiff was subjected to and was so severe it caused Plaintiff to suffer from severe emotional distress.

64.    Due to the hostile work environment Plaintiff experienced a constant sense of anxiety and dread due to the spontaneous manner in which Anderson's discriminatory conduct would occur.  Put differently, at any point in time in the workday, Anderson would interrupt Plaintiff and perpetuate the discriminatory conduct towards Plaintiff.

65.    Accordingly, the discriminatory conduct was sufficiently pervasive within the work environment.

**C.    Any Reasonable Person Would Be Affected by the Discrimination**

66.    As previously averred, Anderson routinely and purposefully ignored and ostracized Plaintiff, these actions were unique to Plaintiff and caused her severe emotional distress. These actions perpetrated by a supervisor would affect any reasonable person.

67.    Additionally, Plaintiff was placed under a high level of scrutiny and had unattainable goals set for her to achieve. Anderson and Defendant purposefully targeted Plaintiff with this behavior in an effort to expedite her termination or resignation. A reasonable inference can be made that any similarly situated person would be detrimentally affected by these actions.

68.    The racially discriminatory treatment Plaintiff endured would incontrovertibly detrimentally affect any reasonable person similarly situated to Plaintiff, in terms of race and accompanying physical characteristics.

**D.    *Respondeat Superior* Liability is Existent.**

69.    Plaintiff lodged formal complaints about the hostile work environment she was forced to endure to Anderson.

70.    As previously averred, as Plaintiff's direct supervisor, Anderson was the proper agent for Plaintiff to notify about these instances of hostility.

71.    Unfortunately, in this unique situation, Anderson was the perpetrator of the hostilities and took no action to remedy the situation or reprimand herself for her actions against Plaintiff.

72.    Additionally, through repeated threats of termination for slight infractions Anderson instilled a fear into Plaintiff regarding her employment with Defendant. Because of this fear, Plaintiff did not feel comfortable reporting the hostile nature of Anderson to other agents of Defendant as she feared for her job security.

73.    Therefore, Defendant violated Title VII and/or the PHRA in creating, sustaining, and failing to rectify a racially hostile work environment.

74.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of paya and benefits, but also

substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and in entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Toni Beck, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

<u>COUNT III</u>
### DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE ADA AND PHRA
### 42 U.S.C. § 1201, *et seq.* and 43 Pa. Cons. Stat. § 951, *et seq.*

75.     Plaintiff incorporates the allegations contained in the paragraphs above, as fully set forth at length herein.

76.     The ADA was enacted in 1990 in an effort to provide a national mandate designed to eliminate discrimination against qualified individuals living with disabilities.  42 U.S.C. § 12101.  Accordingly, the ADA provides that no employer shall discriminate against an individual on the basis of their disability with regard to the terms, conditions, and privileges of employment. See 42 U.S.C. § 12112(a).

77.     To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) they are a disabled person within the meaning of the ADA; (2) they are  otherwise qualified to perform the essential functions of her job, with or without reasonable accommodations by the employer; and (3) they suffered an otherwise adverse employment decision as a result of discrimination.  See, *McGlone v. Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at *2 (3d Cir., filed May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

**A.     Plaintiff is a "Disabled Person" Pursuant to 42 U.S.C. § 12102 of the ADA.**

78.    As established herein, Plaintiff possesses a "disability" under the meaning of the ADA and is correspondingly "disabled" for purposes of establishing her *prima facie* case, given the numerous ways in which Plaintiff's Disabilities substantially impaired her major life activities.

79.    Specifically, Plaintiff suffers from various maladies, including but not limited to, Type 2 Diabetes, Gastro/Digestive issues, and most pertinent to this case, "Brain Freeze" – a cognitive condition that causes individuals to suffer from a decreased ability to comprehend information and leads to "general forgetfulness".

80.    Given the far-reaching impact of Plaintiff's numerous Disabilities, Plaintiff's major life activities were substantially impaired both physically by the actual maladies and by the means in which Plaintiff was forced to adapt her major life activities to minimize the exacerbation of the Disabilities.

**B.    Plaintiff is a Qualified Individual Pursuant to 42 U.S.C. § 12111 of the ADA and was Qualified to Perform the Essential Functions of the Position With or Without Reasonable Accommodations.**

81.    At all times material, Plaintiff was qualified to perform the essential functions of the Position. The ADA provides that a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

82.    To meet this definition, Plaintiff must show she possesses "the requisite skill, experience, education and other job-related requirements of the employment position" and that she "can perform the essential functions of the position with or without reasonable accommodations. *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001) citing *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir.1998).

83.    Plaintiff possessed and exhibited the skill, experience, and ability needed to perform the essential functions of the Position. Specifically, Plaintiff was sufficiently skilled in the areas of communication, interpretation, and problem solving. Specifically, Plaintiff excelled in assisting callers navigate their Unemployment Compensation requests and questions and successfully processed said callers into the Unemployment Compensation system.

84.    Plaintiff required minimal accommodation to the terms and conditions of her employment from Defendant. The accommodations Plaintiff requested were to be retrained in the areas her supervisors deemed her inadequate in and to be able to take notes and retain them when fielding caller requests or claims. If Defendant provided Plaintiff with these accommodations, she would have been able to perform her job duties to the extremely high standards Anderson held her to.

**C.    Plaintiff Suffered an Adverse Employment Action as a Result of Discrimination.**

85.    On or about February 15, 2023, Plaintiff was terminated from her employment with Defendant. Plaintiff was informed she was terminated because her work performance had not met the standards of Defendant.

86.    Notably, the standards Plaintiff was being held to were unattainable without the accommodations Plaintiff requested and had denied by Anderson. Had Anderson worked with Plaintiff to receive the accommodations she requested; Plaintiff would have been able to meet those lofty goals set for her.

87.    Because Plaintiff did not receive accommodations she requested, she could not meet the excessive standards set by Anderson which Defendant then relied upon to terminate Plaintiff.

**D.    Plaintiff is entitled to pursue punitive damages as Defendant discriminated against her with malice and reckless indifference to her federally protected rights.**

88.    A plaintiff may recover punitive damages where she can demonstrate a defendant, "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Godwin v. George Washington, LP*, No. 22-1066, 2022 BL 467663, at *3 (W.D. Pa. Dec. 30, 2022) citing 42 U.S.C. § 1981(a)(b)(1). The terms "malice" and "reckless indifference" pertain specifically to the defendant's knowledge that it acted in violation of federal law rather than an awareness of engaging in "discrimination". *Id.* citing *Kolstad v. American Dental Ass'n*, 527 U.S. 526 , 535 (1999).

89.    At all times material, Defendant acted with the knowledge that it was lawfully required to provide a workplace free of discrimination to individuals like Plaintiff who were statutorily protected by the ADA. In terminating Plaintiff, Defendant acted both with malice and reckless indifference to Plaintiff's federally protected rights and Defendant's actions warrant Plaintiff's recovery of punitive damages pursuant to 42 U.S.C. § 1981(a)(b)(1).

90.    As a direct and proximate result of Defendant's discriminatory conduct in violation of the ADA and the PHRA, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Toni Beck,  seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

## COUNT IV

**UNCORRECTED HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADA
AND THE PHRA
42 U.S.C. § 1201, *et seq.* and 43 Pa. Cons. Stat. § 951, *et seq***

91.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

92.     The ADA states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to … terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In construing this phrase, courts have recognized a cause of action for a hostile work environment. See, e.g., *Shaver v. Independent Stave Co*., 350 F.3d 716, 720 (8th Cir. 2003); *Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 666-67 (3d Cir. 1999).

93.     "A claim for harassment based on disability, like one under Title VII, would require a showing that: (1) [the plaintiff] is a qualified individual with a disability under the ADA; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on [his] disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment; and (5) [the employer] knew or should have known of the harassment and failed to take prompt effective remedial action." *Walton*, 168 F.3d at 667.

94.     The inquiry into whether a person is disabled under the ADA is made on a case-by-case analysis. *Tice v. Centre Area Transport Authority*, 247 F.3d 506, 513 n.5 (3d Cir. 2001).

**A.      Plaintiff is a Qualified Individual With a Disability Pursuant to the ADA.**

95.     As averred above, Plaintiff is disabled within the meaning of the ADA and the PHRA.

96.     Plaintiff suffers from various maladies, including but not limited to, Type 2 Diabetes, Gastro/Digestive issues, and most pertinent to this case, "Brain Freeze" – a cognitive condition that causes individuals to suffer from a decreased ability to comprehend information and leads to "general forgetfulness". Given the far-reaching impact of Plaintiff's numerous Disabilities, Plaintiff's major life activities were substantially impaired both physically by the actual maladies and by the means in which Plaintiff was forced to adapt her major life activities to minimize the exacerbation of the Disabilities.

**B.     Plaintiff was Subjected to Unwelcome Harassment.**

97.     As averred above, Plaintiff was subjected to unwelcome harassment by agent of Defendant and her direct supervisor, Anderson.

98.     Anderson placed Plaintiff under a heightened level of scrutiny and required her to meet unattainable goals that other similarly situated coworkers who were not disabled were not placed under.

99.     Because of the high standards Anderson held Plaintiff to, Plaintiff would often fall short of Anderson's expectations and due the high level of scrutiny placed on Plaintiff, Anderson continually threatened to terminate Plaintiff if she made even a minor infraction while performing her job duties.

100.    Being under the constant watch of a supervisor who has continually threatened to terminate you and who perpetuated a discriminative work environment led Plaintiff to suffer from emotional distress in the workplace.

**C.     The Harassment was Based on Plaintiff's Disabilities.**

101.    As previously averred, Plaintiff informed Defendant of her Disabilities, namely the Brain Freeze.

102.    Shortly thereafter, Anderson began reprimanding Plaintiff for her job performance and began threatening Plaintiff with termination.

103.    Plaintiff requested accommodation, specifically, to have notes with her to aide in fielding questions from clients, and to be retrained on the subject matter that Anderson was alleging Plaintiff was not performing sufficiently in.

104.    Anderson and Defendant denied Plaintiff's request for accommodation and when Plaintiff's job performance did not meet the lofty standards of Anderson and Defendant, they reprimanded her and ultimately terminated her instead of being accommodative to Plaintiff.

105.    Defendant, by and through Anderson, perpetuated the harassment of Plaintiff because her Disabilities limited her ability to perform her work duties to the standard Anderson placed on Plaintiff, therefore, the harassment was based on Plaintiff's Disabilities.

**D.    The Harassment Was Sufficiently Severe and Pervasive and Altered Plaintiff's Working Conditions and Created a Hostile Work Environment.**

106.    Due to the harassment from Anderson, Plaintiff suffered severe emotional distress and constant anxiety surrounding the retention of her employment with Defendant.

107.    The constant threats of termination and reprimands for slight infractions severely affected Plaintiff and her job performance and resulted in a hostile work environment.

**E.    Defendant Knew or Should Have Known of the Harassment and Failed to Take Prompt Effective Remedial Action.**

108.    Plaintiff made Anderson aware that her treatment of Plaintiff was harassment and hostile in nature and requested that she remedy her behavior toward Plaintiff.

109.    As Anderson was Plaintiff's direct supervisor, Plaintiff utilized the proper agent to report acts of harassment and discrimination. Unfortunately, in this unique situation, the person perpetuating the hostilities was Plaintiff's direct supervisor.

110.    Anderson failed to take any remedial actions after being informed by Plaintiff how her behavior had negatively affected Plaintiff. Anderson's harassment and animus towards Plaintiff persisted until Plaintiff was wrongfully terminated.

111.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Toni Beck, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

### COUNT V
### INTENTIONAL RACIAL DISCRIMINATION
### IN VIOLATION OF SECTION 1981
### 42 U.S.C. § 1981

112.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

113.    In relevant part, Section 1981 grants "[a]ll persons. . . the same right. . . to make and enforce contracts. . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).

114.    It is well-settled that Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts.  See, e.g., *Johnson v. Railway Express Agency*, 421 U.S. 454, 459-460 (1975).

115.    Further, Section 1981 clarifies that the term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

116.    To establish a prima facie case of disparate treatment pursuant to Section 1981, a plaintiff must establish that: 1) they are a member of a protected class; 2) they were qualified for the position; 3) they suffered an adverse employment action; and 4) that action occurred under circumstances giving rise to an inference of discrimination.

**A.    Plaintiff is A Member of a Protected Class and Was Qualified for the Position At Issue.**

117.    As averred above, Plaintiff was a member of a protected class insofar as she is an African American individual. .

118.    Further, Plaintiff, at all times relevant hereto, was qualified for the Position and possessed and exercised the skill, experience, and ability needed to perform the essential functions of her role.  Specifically, Plaintiff was sufficiently skilled in the areas of communication, interpretation, and analysis needed to engage with Defendant's clientele and to correspondingly deliver the guidance and other services Defendant required of its employees.

**B.    Plaintiff was Subjected to an Adverse Employment Action Under Circumstances Which Give Rise to Inferences of Discrimination.**

119.    As a result of her race, Plaintiff was subjected to intentional discrimination in the form of verbal warnings, threats, and ultimately termination—fates not suffered by his Caucasian peers.

120.    A natural and sustainable inference of discrimination arises in connection with the abovementioned adverse actions as Defendant intentionally treated Plaintiff inequitably as

compared to her similarly situated Caucasian peers when it: (i) continually threatened to terminate Plaintiff; and (ii) subjected Plaintiff to unattainable work performance goals and standards that her similarly situated Caucasian coworkers were not subject to.

121.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Toni Beck, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT VI
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF SECTION 1981
## 42 U.S.C. § 1981

122.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

123.     To establish a hostile work environment claim against an employer under Section 1981, a plaintiff employee must prove: (1) the employee suffered intentional discrimination, among other ways, because of his race or gender; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability.  See *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (internal citations omitted); see also, *Sarullo v. US Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003).

**A.     Plaintiff Suffered Intentional Discrimination Because of Her Race.**

124.    As alleged above, Anderson and Defendant intentionally discriminated against Plaintiff on the basis of her race, as more fully delineated in Paragraphs 58-62 above.

**B.    The Discrimination Was Sufficiently Severe and Pervasive that it Detrimentally Impacted Plaintiff and Would Have Negatively Impacted a Reasonable Person in Similar Situations.**

125.    The forms of racial discrimination described hereinabove were so profound that they, in and of themselves and apart from one another, constituted intentional racial discrimination that was shockingly and extremely severe and pervasive for purposes of Section 1981.

126.    The forms of discrimination occurred frequently and went uncorrected by Anderson and Defendant.

127.    The discriminatory animus directed at Plaintiff was so severe and detrimental to Plaintiff that the same led to her termination of employment.

128.    Plaintiff considered the intentional racial discrimination delineated above to be unwelcome and at no time did she ever suggest or imply that it was acceptable behavior.

129.    Any reasonable person in the situation of Plaintiff would have been detrimentally affected if the comments or actions of Plaintiff's supervisor were directed at any other African American individual.

**C.    *Respondeat Superior* Liability Exists Given Defendant's Role in Perpetuating the Hostile Work Environment.**

130.    As detailed above, Defendant's own supervisor – Anderson – fostered, ratified, and perpetuated the discriminatory work environment to which Plaintiff was subjected to.

131.    Given the central role of the individuals imbued with organizational authority, the overt knowledge these individuals possessed at it related to the ongoing hostile work environment,

and Anderson's attempts to dissuade Plaintiff from reporting the discriminatory environment further, Plaintiff can readily establish the existence of *respondeat superior* liability.

132.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

For the above-stated reasons, Plaintiff, Toni Beck, respectfully requests this Honorable Court to enter judgment in her favor, and against Defendant Commonwealth of Pennsylvania, and prays for relief as follows:

a.  Declare and find that Defendant committed one or more of the following acts:

  i.  Violated Title VII and the PHRA by intentionally discriminating against Plaintiff on the basis of her race;

  ii.  Violated Title VII and the PHRA by creating and sustaining a hostile work environment on the basis of Plaintiff's race;

  iii.  Violated the ADA and PHRA by intentionally discriminating against Plaintiff on the basis of her Disabilities;

  iv.  Violated the ADA and PHRA by creating and sustaining a hostile work environment on the basis of Plaintiff's Disabilities;

v.         Violated the Rehabilitation Act by intentionally discriminating against Plaintiff on the basis of her Disability;

vi.       Violated the Rehabilitation Act by creating and sustaining a hostile work environment on the basis of Plaintiff's Disabilities;

vii.      Violated Section 1981 by discriminating against Plaintiff on the basis of her race;

viii.     Violated Section 1981 by creating and sustaining a hostile work environment on the basis of Plaintiff's race.

b.       Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

c.       Award equitable relief in the form of back pay and front pay, including

d.       Award pre-judgment and post-judgment interest where accorded by law;

e.       Award reasonable attorney's fees and costs of suit incurred prosecuting these claims;

f.       Award injunctive and other equitable relief as provided by law;

h.       Grant leave to amend to add claims under state and federal laws; and

i.       Award such other and further relief as this Court deems just, equitable, and proper.

**JURY TRIAL DEMANDED**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date:  January 24, 2024                    By: */s/ Kyle H. Steenland*
                                                      Kyle H. Steenland (Pa. I.D. No. 327786)

                                                      The Workers' Rights Law Group, LLP
                                                      Foster Plaza 10
                                                      680 Andersen Drive, Suite 230
                                                      Pittsburgh, PA 15220
                                                      Telephone: 412.910.9592
                                                      Facsimile: 412.910.7510
                                                      kyle@workersrightslawgroup.com

                                                      *Counsel for Plaintiff, Toni Beck*

26